## HEVNER *v.* MATTHEWS.

---

EVIDENCE; DEEDS, DEFECTS IN ACKNOWLEDGMENT OF; RECORDING ACTS.

1. The acts of Congress of 1832, 1838, 1865 and 1867, relating to the acknowledgment of deeds and curing defects therein in order to quiet titles in this District, are to be considered as being in *pari materia*, and are to be liberally construed.

2. While a deed of property in the District of Columbia, acknowledged in 1806 in New Hampshire by the grantor before an officer of that State who purported to be both a notary public and justice of the peace, but containing no certificate of the official character of the officer, was not properly acknowledged under the law then in force, neither a notary or justice of the peace being then authorized to take acknowledgments of deeds of property in this District, the effect of the several acts of Congress of 1832, 1838, 1865 and 1867, relating to the acknowledgment of such deeds and curing defects therein, was to cure such defect and entitle the deed to be recorded.

3. When in such a deed a power of attorney was given two persons jointly to acknowledge the deed for the grantor in this District, which power was executed by one of them only, although the other was living and his failure to act unaccounted for, such defective acknowledgment is cured by the acts of Congress of April 20, 1838, and March 3, 1865.
4. The words "in favor of parties in actual possession," in the act of Congress of March 3, 1865, curing certain defective acknowledgments of deeds, are not to be restricted to those in actual physical possession of property. Seizin is presumed to accompany title, and parties are presumed to be in possession under their deeds until the contrary is shown.

No. 318.   Submitted October 5, 1894.   Decided November 5, 1894.

HEARING on a bill of exceptions by the plaintiff in an action of ejectment. *Judgment reversed.*

The COURT in its opinion stated the case as follows:

This is a suit at common law in ejectment; and the only question presented on this appeal is whether the court below erred in excluding from the consideration of the jury the record of a certain deed of conveyance that had been offered in evidence.

The property in controversy is lot No. 5, in square No. 161, in the city of Washington, of which the appellant, Sarah Maud Hevner, who was plaintiff in the court below, claimed in her declaration, filed on the 15th day of June, 1892, to have been lawfully possessed on the 13th day of June, 1892, and to have been on the last mentioned day unlawfully ejected therefrom by the defendants, Charles M. Matthews and William C. Hill, and to be yet by them unlawfully excluded therefrom: and she claims the possession of the lot.

It appeared from the testimony that, in the original division of the property contained within the city of Washington between the United States and the original proprietors, this lot was assigned to the United States, and that the United States subsequently disposed of it by deed of conveyance to one Nathaniel Cutter, a citizen of New Hampshire. By a deed dated June 20, 1806, and transcribed among the land

records of the District of Columbia, Nathaniel Cutter conveyed or sought to convey, the property to one Edward Parry. It is this deed, or rather the record or transcript of it, that is in controversy in this case, so far as concerns the present appeal. The plaintiff deduces title by divers *mesne* conveyances from Parry.

It also appeared in evidence that the defendants were in possession of the property as trustees under the will of Wm. W. Corcoran, deceased, who had bought the lot at a tax sale in the year 1833; that the property was worth upwards of $40,000; that the plaintiff had received it without any valuable consideration from her father, one Peter Hevner; and that Peter Hevner had procured the title from one George G. Campbell, a resident of West Virginia, under an agreement that Hevner, who knew that Corcoran was then in possession, should pay for it $1,000 in cash and $4,000 additional "when the title should be judicially determined to be in said Peter Hevner."

At the trial, the record of the deed from Cutter to Parry was offered in evidence—for the original deed was not produced—and was admitted against the objection of the defendants and "subject to the further opinion of the court." The court, upon consideration of it, subsequently ruled it out, and held that the deed had not been lawfully acknowledged and recorded, and that the record therefore was not properly admissible in evidence. And this deed being a necessary link in the plaintiff's chain of title, he directed the jury to find a verdict for the defendants, which was accordingly done. From this ruling the plaintiff has prosecuted the present appeal.

The deed in controversy,* which is given in full in the

---

*Deed from Nathaniel Cutter to Edward Parry.*—Know all men by these presents that I Nathaniel Cutter of Portsmouth in the county of Rockingham & State of New Hampshire mariner for and in consideration of the sum of fifteen hundred dollars to me in hand before the delivery hereof well and truly paid by Edward Parry of Portsmouth aforesaid merchant the receipt whereof I do hereby acknowledge have given granted bargained sold & by these presents do give

record with its several acknowledgments, and which bears date on June 20, 1806, appears to have been executed in New Hampshire, where Cutter resided, on the day of its date, to have been duly acknowledged by him on that day

grant bargain & sell alien enfeoff convey and confirm unto the said Edward Parry his heirs and assigns forever five lots of land in the city of Washington in the District of Columbia to wit : Lot numbered five in square numbered one hundred and sixty-one containing twelve thousand one hundred & eighty square feet lots numbered one and two in square numbered five hundred and sixty-nine containing six thousand six hundred & eight square feet lot numbered three in square numbered eleven hundred & forty-eight containing thirteen . thousand five hundred & ninety-six square feet & lot numbered four (4) in square numbered eleven hundred & forty-nine all said lots being in the city of Washington aforesaid together with all & singular their rights privileges advantages and appurtenances and all the right title claim & interest which the United States & the superintendent appointed and authorized to sell the said lots had and which is by sale & conveyance decreed to me the grantor in the premises the premises hereby conveyed being the same & all those five lots of land in s'd city of Washington which I purchased, being the highest bidder at a public vendue holden for the sale of said lots & others & the thirtieth day of August A. D. one thousand eight hundred and two by Thomas Monroe superintendent and by him conveyed to me by his deed thereof made in his said capacity bearing date the twenty-ninth day of October in the year last mentioned & recorded in the land records of Washington county in the District of Columbia, on the eleventh day of November in the same year 1802 as by said deed of the said Thomas Monroe to me reference being herein made thereto may appear the premises being the whole estate conveyed to me by said deed however the same be bounded or however they may might or should be described the said lot No. four containing thirteen thousand five hundred and ninety-six square feet & the whole quantity of said five lots being forty-five thousand nine hundred & eighty square feet by estimation.    To have and to hold the said granted premises with all the privileges & appurtenances to the same belonging to him the said Edward Parry his heirs and assigns to his and their own and only proper use and benefit forever and I the said Nathaniel Cutter for myself my heirs executors & administrators do hereby covenant grant and agree to & with the said Edward Parry his heirs and assigns that until the delivery hereof I am the lawful owner of the said premises and seized and possessed thereof in my own right in fee simple & have full power and lawful authority to grant and convey the same in manner aforesaid that the said premises are free and clear of all and every incumbrance whatsoever and that I my heirs executors & administrators shall and will warrant the same to him the said Edward Parry his heirs and assigns against the lawful claims & demands of any person or persons whomsoever.    And I the said Nathaniel Cutter do further covenant in manner aforesaid that no defect informality of description in this instrument or or any manner of executing it shall vitiate or invalidate it as to me my heirs executors administrators or any claiming under me or them but I & they & every of them, shall be forever barred from all claim to the premises any such defect or informality notwithstanding & I further covenant in like manner

before one Daniel Humphreys, a notary public and justice of the peace in that State, who appended his name to the deed as a witness with one Washington Pierce. Appended also to the deed is the signature of one William Yeaton as

that I my heirs executors & administrators shall and will at any and all times on the request of the said Edward Parry his heirs ex. adm'rs or assigns & at his or their expense make such further legal assurance of the premises or his or their counsel learned in the law shall advise and direct and I do further by these presents fully authorize and appoint William Yeaton of Alexandria in the county of Washington in the District of Columbia merchant & Washington Pierce of the same Alexandria in said district comms. merchant to be my true and lawful attorney with express & full power & authority for me and in my stead & name to appear before two of the justices of the peace for Washington county Columbia District & before them in my name to acknowledge this instrument of writing to be my free act and deed.

In witness whereof, I have hereunto set my hand & seal this twentieth day of June anno Domini one thousand eight hundred and six.

NATHANIEL CUTTER. [SEAL]

Signed, sealed, and delivered in the presence of—the word State being erased & the word District interlined before sealing—

WASHINGTON PIERCE.
DAN'L HUMPHREYS.
WM. YEATON.

STATE OF NEW HAMPSHIRE, }
    Rockingham County, Portsmouth. }

I, Daniel Humphreys, notary public in & for the State of New Hampshire, by letter patent duly commissioned and sworn a justice of the peace and of the quorum throughout the same State, do certify that on this twentieth day of June, anno Domini one thousand eight hundred and six, the before-named Nathaniel Cutter, a citizen here to me well known, did sign, seal, & deliver the above and before written instrument in my presence & in presence of Washington Pierce, who thereupon subscribed his name to the same instrument as a witness to the execution thereof, and I also signed my name thereto as a witness at the same time, and thereupon the said Nathaniel Cutter before me acknowledged the said instrument so executed to be his free act and deed.

In testimony whereof I have subscribed these presents & to the same have affixed my notarial seal of office on the day in the month & year last aforesaid.

[L. C.]    DANIEL HUMPHREYS,
    Not. Pub. & Just. of Peace & Q'l'd Throughout said State.

DISTRICT OF COLUMBIA, } To wit:
    Washington County, }

This day W. Yeaton, one of the subscribing witnesses to the foregoing deed of indenture and power of attorney in the said deed contained, personally appeared before us, Sam'l N. Smallwood & Robert Alexander, two justices of the peace in and for the county aforesaid, & made oath on the Holy Evangels of God that he did see Nathaniel Cutter, the grantor in the said deed of indenture named & also the person in the said power of attorney named, sign, seal, & deliver the

a witness; but he is not mentioned in the certificate of acknowledgment, although Pierce is mentioned. The deed contains full covenants of general warranty, and it appoints, in accordance with the provisions of law then in force, William Yeaton and Washington Pierce, both stated to be of Alexandria, then in the District of Columbia, as his attorneys to appear before two justices of the peace in the County of Washington, in the District of Columbia, and to acknowledge the deed for him as his deed. Only one of the two attorneys, William Yeaton, appeared; and before two justices of the peace in the District of Columbia, he first made oath, as one of the two or three subscribing witnesses, to the due execution of the deed by Cutter in the presence of the affiant, and to his own attestation of it at the time by the request of the grantor. Then, as attorney and by virtue of the power conferred upon him in the instrument itself, he acknowledged the deed to be the act and deed of Cutter. The failure of Pierce, the other attorney and subscribing witness, to make acknowledgment of the deed is not accounted for in any manner.

The question, therefore, is presented whether the record

---

said deed of indenture & the power of attorney therein contained as his respective act and deed, & that he, the said W. Yeaton, signed his name as a subscribing witness to the aforesaid deed of indenture & the power of attorney therein contained at the request of the said Nathaniel Cutter.

Sworn to before us this 12th day of November, in the year 1806.

SAM'L N. SMALLWOOD.
ROBERT ALEXANDER.

DISTRICT OF COLUMBIA, ⎫ *To wit:*
   *County of Washington,* ⎭

Be it remembered that on the 12th day of Nov., in the year eighteen hundred and six, before us, Sam'l N. Smallwood & Rob't Alexander, two justices of the peace in and for the county aforesaid, personally appeared W. Yeaton, named in the power of attorney in the annexed deed contained, the execution whereof hath been duly proved before & by virtue of the said power of attorney, &, in pursuance of the authority thereby given, acknowledged the annexed deed of indenture or instrument of writing to be the act and deed of Nathaniel Cutter, therein named, according to the true intent and meaning thereof.

Acknowledged before—

SAM'L N. SMALLWOOD.
ROBERT ALEXANDER.

of a deed so executed and acknowledged is now properly admissible in evidence.

*Messrs. A. A. & T. W. Birney* for the appellant.

*Mr. Henry S. Matthews* and *Messrs. Gordon & Gordon* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

The law in force at the time of the execution of this deed and its delivery for record, which authorized the record of such instruments of writing and the use of the record in evidence, consisted of the act of Assembly of Maryland of 1715, Ch. 47, Secs. 8 and 9, and the act of Assembly of 1766, Ch. 14, Sec. 4, together with the act of Assembly of 1791, Ch. 45, whereby the Territory or District of Columbia was ceded by Maryland to the Government of the United States, and the act of Congress of the United States of February 27, 1801 (2 Stat. 103), assuming jurisdiction over the District of Columbia.

The act of Maryland of 1715, Ch. 47, Secs. 8 and 9, provides for the acknowledgment of deeds of bargain and sale before the provincial court or one of its justices; or in the county court or before two of its justices; or before the county clerk, if the grantor should reside at a distance from the court. And if the grantor should reside out of the province, the acknowledgment was required to be made under a letter of attorney well and sufficiently proved. And deeds so acknowledged were to be enrolled among the records of the court.

The act of 1766, Ch. 14, provided for the acknowledgment and enrolment of all deeds, and not merely those of bargain and sale.

The act of 1791, Ch. 45, whereby Maryland ceded the District of Columbia to the United States, provided for the appointment of a clerk of records by the Commissioners, and that deeds of conveyance should continue to be acknowledged and enrolled in said District in accordance

with the laws then in force in the State of Maryland. And the act of Congress of 1801 provided for the continuance of the laws of Maryland in that part of the District of Columbia which was ceded by that State. There was no attempt by Congress to regulate the matter of acknowledgment until the year 1832.

It is apparent, therefore, and it is conceded by both sides, that the deed in question was not properly acknowledged under existing laws in 1806. By those laws deeds were required to be acknowledged either in person or by attorney before a justice of the provincial court, or two justices of a county court; and justices of the peace were not authorized to act at all in the matter. Such acknowledgment as there was in the present case was before a notary public and justice of the peace in New Hampshire and two justices of the peace in the District of Columbia; and even if one attorney was competent to act when two had been designated, there was no provision of law in force at the time for acknowledgment before two justices of the peace.

The act of Congress of 1832, Ch. 113 (May 31, 1832, 4 Stat. 520), which seems to have been the first attempt of Congress, as already stated, to legislate upon the subject, provided that acknowledgment of deeds might be made by grantors before any judge of a court of record, or before any chancellor, or before any judge of a Federal court, or before two justices of the peace in any State in which the grantor might be; superadding, however, the requirement of a certificate of the clerk of the proper court to the official character of the person or persons taking the acknowledgment.

The act of Congress of April 20, 1838 (5 Stat. 226), provided that two justices of the peace in the District of Columbia might take acknowledgments of deeds without any certificate from the clerk of a court of record to their official character; but that such certificate should be annexed to acknowledgments taken before justices of the peace outside

of the District of Columbia. This act had a clause in it to the effect "that all deeds heretofore recorded within the District of Columbia, and in the county wherein any lands, tenements, and hereditaments are situated, which are conveyed in or by said deeds, on an acknowledgment before any two justices of the peace for said District, shall be good and effectual for the purpose or purposes therein mentioned, and valid as to all subsequent purchasers and all creditors, from the passage of this act."

By the act of Congress of September 16, 1850 (9 Stat. 458), the power to take acknowledgments of deeds was given to notaries public; and any one notary was thereafter authorized to take such acknowledgments, without, however, dispensing with the requirement of a certificate as to his official character when the acknowledgment was taken outside of the District of Columbia.

The next legislation upon the subject was an act of March 3, 1865 (13 Stat. 531), in which it was sought to remedy several classes of defective or insufficient acknowledgments, and to give validity to them. Seven of these classes are enumerated, as follows:

1st. Where married women had executed and acknowledged deeds, in conjunction with their husbands, for the conveyance of any interest in real estate; or where their acknowledgments to deeds, intended to be in bar of dower, were not in due form of law.

2d. Where deeds had been executed and acknowledged by a duly appointed attorney in fact.

3d. Where deeds executed by an attorney in fact had been acknowledged before officers different from those before whom the power of attorney was proved.

4th. Where deeds had been executed by an attorney in fact, and the power of attorney had been proved before one justice of the peace.

5th. Where deeds had been acknowledged outside of the District of Columbia, before a judge of a United States court,

or before two aldermen of a city, or before the chief magistrate of a city, or before a notary public.

6th. Where deeds acknowledged by an attorney in fact or the officer of a corporation had been erroneously acknowledged as the act of the attorney or officer, instead of the principal or corporation.

7th. Where deeds were acknowledged without a legal certificate annexed as to the official character of the officer or officers taking the acknowledgment.

It was provided that in these cases severally the deeds should be of the same effect and validity:

1st. As if such deeds had been executed and acknowledged by such married women in due form of law.

2d. As if such deeds had been executed and acknowledged by the grantors themselves, instead of an attorney in fact.

3d. As if the power of attorney had been proved before the officer or officers taking the acknowledgment.

4th. As if the power of attorney had been proved before two justices of the peace.

5th. As if the acknowledgment had been made before a judge of a State court, or before two justices of the peace.

6th. As if the deeds had been properly acknowledged as the act of the principal or corporation.

7th. As if legal certificates had been duly annexed as to the official character of the officer or officers taking the acknowledgments.

Notwithstanding the evident attempt manifested in this act to be precise and specific, the act itself is a glaring instance of clumsy phraseology; and the clumsiness has not been improved by the blunder of the revisers in the revision of 1873, in failing to make the clauses correspond to each other as they had undertaken to do. Rev. Stat. of U. S. for the District of Columbia, Sec. 459. The intention of the statute, however, is very plain.

Two years afterwards, on March 26, 1867, it was found

expedient to pass · another act, both of a prospective and retroactive character, in reference to the acknowledgment of deeds of real estate situated in the District of Columbia; and by this act it was provided that thereafter acknowledgments might be taken by the recorder of deeds for said District, or by a single justice of the peace, and that any such acknowledgments theretofore taken by a single justice of the peace should be taken as a valid acknowledgment. 15 Stat. 6.

It may be proper to add, also, that, under a proviso in the act of March 3, 1865, already cited, it was enacted that "the record and copy thereof of any deed recorded as aforesaid shall be evidence thereof in the same manner and to have the same effect as if such deed had been originally executed, acknowledged and recorded according to law."

The question for our determination is whether, under these various statutes that have been cited, the record, from the books of the Recorder of Deeds for the District of Columbia, of the deed from Nathaniel Cutter to Edward Parry, purporting to have been executed in 1806, and offered in evidence on behalf of the plaintiff in the cause was properly excluded by the court below from consideration by the jury. The question is one merely of evidence, not of the validity or invalidity of the deed in controversy. For it is not pretended that the deed was not executed in the manner indicated in the record; or that, if the original deed were produced, it could not be admitted in evidence as a good common law deed upon due proof of its execution according to the usages of the common law. The contention is, that the deed was not acknowledged in accordance with the forms of law in force at the time, so as to authorize it to be properly admitted to record; and, that, therefore, the transcript found among the records was not admissible in evidence, there being, as it is claimed by the appellees, no statute authorizing or validating the acknowledgment or acknowledgments made to this deed. For it is argued that

the case is not covered by any of the curative acts to which reference has been made.

The question is one that may very seriously affect the integrity of our record system, and is of greater importance than would be indicated by the magnitude of the interests involved in the present suit.

That remedial statutes of the character of those that have been cited, should be liberally construed with the view of giving full effect to the intention of the legislature, is a rule that may be said to be universally established by the concurrence of all the authorities. *United States* v. *Freeman*, 3 How. 556; *Carpenter* v. *Dexter*, 8 Wall. 513; *Kelly* v. *Calhoun*, 95 U. S. 710; *Bechtel* v. *U. S.*, 101 U. S. 597; Dwarris on Statutes, 632; Sedgwick on Statutory and Constitutional Law, 308. The sparse population of our country in the early part of this century, the obstacles to travel, the difficulties of communication, as well as ignorance and inadvertence, and perhaps other causes, contributed to the occurrence of numerous defects in the formal execution of deeds of real estate in this District during the first half century of its separate existence, mainly in the matter of acknowledgment; and these defects, which went not to the matter of substantial right, but rather to that of difficulty of proof, became so numerous in course of time as to call for the interposition of the legislative authority, when, in consequence of the lapse of time, or for other reasons, it became impossible to supply the deficiency by any action of the parties. When the record system was in its infancy, and merely in an experimental stage, it is no wonder that the legislature restricted it within narrow limits, and required that conveyances of land, in order to be placed upon the same basis as the records of a court, should be acknowledged before a justice of some court. But justices of courts were not always available for the purpose; and the increasing demand for the greater freedom of transfer of real estate found voice in legislative enactment for the greater facility of execution of deeds of conveyance,

and for validating the more or less irregular proceedings that had occasionally been resorted to from time to time. There are few titles in the history of which such defects have not existed; and it is in the interest of the general peace and quiet of the community that these statutes of repose have been enacted, to remove difficulties of form, not of substance, that have occurred in the course of attempted compliance with formal statutory requirements.

It is very evident that the acts of Congress of April 20, 1838, March 3, 1865, and March 26, 1867, already mentioned, sought to remedy all the formal defects in the acknowledgment of deeds that were then known, or were supposed to exist, and were brought to the attention of Congress. If at the time there were others of a similar character that were not specified in the statutes, and which affected titles in no greater and in no less a degree than those that were specified, we may well assume that the omission was the result of oversight, and because such defects were not brought to the attention of the legislative authority. And we may assume, further, that, if such defects were within the reason of the statutes that were enacted, any reasonable construction of the words of the statutes that would embrace them, would be fully justifiable and eminently right and proper. But we do not think that we are required greatly to strain the language of the statutes, if indeed to strain it at all, in order to embrace the present case within its purpose.

Leaving out of consideration for the present the warrant of attorney contained in the deed now before us and the defective or insufficient execution of that power by the attorney or attornéys named therein, it seems that the grantor in the deed acknowledged it himself in person before an officer in New Hampshire who purported to be both a notary public and a justice of the peace. Neither a notary public nor a justice of the peace, it is true, was authorized by any statute in force in the District of Columbia at the time to take any such acknowledgment; but the act of

March 3, 1865, gave retroactive effect to the action of the notary by providing, as it did, that deeds theretofore acknowledged before any such officer in any State in the Union, should have the same effect as though the acknowledgment had been made before a judge of a State court, or before two justices of the peace, as authorized by the act of 1832. It is true that the act of 1832 is not itself retroactive, and would not have been sufficient to give validity to an acknowledgment taken before two justices of the peace in 1806. But all these acts are undoubtedly to be considered as being in *pari materia* (*United States* v. *Freeman*, 3 How. 556; *Patterson* v. *Winn*, 11 Wheat. 380; *Ryan* v. *Carter*, 93 U. S. 78); and the curative effect of the act of 1865 is not to be restricted to acknowledgments taken subsequently to the year 1832. That would be to emasculate the act instead of giving it large and liberal vitality.

We may conclude, therefore, that under the specific provisions of the act of Congress of March 3, 1865, the deed in question should be regarded as though it had been acknowledged by the grantor in person before two justices of the peace in the State of New Hampshire. That conclusion, however, leaves untouched the objection of the absence of an official certificate to the official character of the notary. But this objection is also disposed of by the act of 1865; for that act specifically provides that the absence of a legal certificate to the official character of the officer or officers taking the acknowledgment shall not invalidate the deed; and there is nothing in the act itself to warrant the inference that cumulative defects were not intended to be remedied by it. Both the defects in the acknowledgment before us are specifically provided for in that act; and there is no reason to restrict the operation of it to a single defect in any one acknowledgment. On the contrary, the plain intention of the legislature being to remedy and cure all these defects, they should be regarded as cured, whether they exist singly or together.

The same course of reasoning would lead us to sustain the

validity of this acknowledgment under the curative act of 1867, as the act of the grantor taken before a single justice of the peace. For there is nothing in the act of 1867 that restricts its scope to acknowledgments taken before a single justice of the peace in the District of Columbia. Considering the purpose of the act, it would do violence to the sense and unduly restrict the letter of it, so to construe it with reference to its remedial process and retroactive effect.

We do not ignore the argument that the remedial provisions of the act of March 3, 1865, were intended for the benefit of parties in actual possession of the property affected. But this we must regard as a strained construction of the statute. The words "in favor of parties in actual possession" are found in the statute in connection merely with the barring of dower, and might well be restricted to that connection. But of this we need not here express any opinion. Suffice it to say, that, if the words are to be construed as limiting and restricting the whole statute, we find no reason and no justification for restricting them to those in actual physical possession of property. Such a restriction would, in many cases, perhaps in most cases, nullify the purpose of the law and destroy its beneficent operation. Seizin is presumed to accompany title, and parties are presumed to be in possession under their deeds until the contrary is shown. This is elementary law.

We might rest here and sustain the validity and efficacy of the acknowledgment before us as the acknowledgment of the grantor himself, made valid by the acts of Congress of 1832, 1838, 1865, and 1867. But we are disposed to sustain the deed no less on the sufficiency of the acknowledgment made by one of the attorneys in fact as affected by the same statutes. We do not understand it to be controverted that an acknowledgment taken by two justices of the peace in the year 1806, although justices of the peace were not then authorized to take such acknowledgments, if otherwise unobjectionable, was rendered valid by the act of April 20,

1838. The argument is that the power of attorney committed by the grantor in the deed to two persons jointly to make acknowledgment of the deed for him was insufficiently executed by an acknowledgment of the deed by one only of the two so designated, and that this insufficiency has not been cured by any statute.

We deem it unnecessary to decide whether a power of attorney given to two persons to do a purely ministerial act, such as undoubtedly is the acknowledgment of a deed when done by an attorney in fact, can be properly executed by one alone, while the other attorney is living and his failure to execute the power is unaccounted for. But it must be remembered that the question here is one of evidence, wholly within the control of the legislative power; and that the defect of evidence in this particular may be remedied by the legislature as well as in any other feature; and that it has remedied it in this instance we are satisfied. The act of March 3, 1865, already cited, provides specifically that "all deeds heretofore recorded, which have been executed and acknowledged by an attorney in fact, duly appointed, . . . shall be . . . of the same effect and validity . . . as if such deeds had been executed and acknowledged by the grantor in the deed." Unless this provision was intended to apply to cases like the present, it would be meaningless; for deeds, executed and acknowledged by an attorney in fact under previous laws, were good and sufficient. Indeed, the language of the act of April 20, 1838, also before cited, would seem to be broad enough to cover the present case. The fifth section of that act is " that *all deeds* heretofore recorded within the District of Columbia, and in the county wherein any lands, tenements, and hereditaments are situated, which are conveyed in or by said deeds, *on an acknowledgment before any two justices of the peace for said District,* shall be good and effectual." It requires no strained construction to hold that this includes all acknowledgments made before two justices of the peace, whether by grantors themselves or by an attorney or attorneys in fact; and the

present case being plainly within the limits of the mischief intended to be remedied, and not being outside even of the letter of the statute, it is reasonable that we should give such effect to that language as is required by the spirit of the legislative purpose.

While the evidences of our titles should be jealously guarded, and our land records preserved from the intrusion of improper documents, and while the utmost care should be observed in the execution of those muniments of title that are intended to be for a memorial to all subsequent generations, so that the peace of the community and quiet possession may be assured, it is most reasonable, with the same end in view, that ancient documents, defectively executed, when the defective execution is only in a formal matter and is plainly the result of ignorance, inadvertence or oversight, should be received with the tender consideration due to their antiquity, and given the full and complete effect which they were intended to have, whenever it is possible so to do.

Entertaining these views, we think that the deed in controversy should have been admitted in evidence by the court below, and that it was error to exclude it. For this error, the judgment of that court must be reversed, and the cause remanded to that court, with directions to set aside the verdict and to award a new trial.

We desire to add that we have not considered the effect upon this suit of the apparently champertous character of the contract between George G. Campbell and Peter Hevner, under which the latter received his title to the property. While the assignments of error were broad enough to include that question, it was not argued before us; and the sole question actually presented to us was that of the admissibility in evidence of the deed that has been mentioned from Cutter to Parry. To that question this decision is limited.

*The order of the court, therefore, is that the judgment of the court below be reversed, with costs, and the cause remanded with directions to grant a new trial.*