## UNITED STATES v. BOSTON & M. R. R.

(District Court, D. Massachusetts. March 20, 1920.)

No. 692.

1. **Master and servant** ⊕13—**Telegraph station operated during daytime and substantial portion of night continuously operated within Hours of Service Act.**

Under Act March 4, 1907, § 2 (Comp. St. § 8678), prohibiting the keeping of telegraph operators on duty more than 9 hours in 24 at stations continuously operated night and day, or for more than 13 hours at stations operated only during the daytime, a station operated during the daytime and a substantial portion of the night is regarded as continuously operated night and day, though closed part of the night.

2. **Master and servant** ⊕13—**Keeping telegraph station open during evening does not make it continuously operated within act.**

The mere keeping open of a railroad station after 6 p. m. does not bring it within the 9-hour class under Hours of Service Act, § 2 (Comp. St. § 8678).

3. **Master and servant** ⊕17—**Night operation of telegraph office within Hours of Service Act is a question of fact.**

What constitutes night operation, under Hours of Service Act, § 2 (Comp. St. § 8678), as to telegraph operators, is a question of fact.

4. **Master and servant** ⊕13—**Whether telegraph station kept open in evening is continuously operated within Hours of Service Act depends on purpose.**

Whether a railroad station kept open until 9 o'clock in the evening is continuously operated night and day, within Hours of Service Act, § 2 (Comp. St. § 8678), as to telegraph operators, depends on whether it is kept open primarily for the accommodation of the public or for purposes connected with the running of trains.

5. **Master and servant** ⊕13—**"Operated," in Hours of Service Act, defined.**

Under Hours of Service Act, § 2 (Comp. St. § 8678), limiting the hours of service of telegraph operators at stations continuously operated night and day and stations operated only during the daytime, "operated" means more than "kept open."

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Master and servant ⟨═⟩17—Government, alleging violation of Hours of Service Act, has burden of showing purpose for which station was kept open.**

In an action for penalties for violations of Hours of Service Act, § 2 (Comp. St. § 8678), by keeping telegraph operators on duty more than 9 hours at stations kept open until 9 o'clock in the evening, it devolved on the government to establish the facts essential to recovery, and in the absence of evidence as to the purpose for which the stations were kept open, or the sort of work done, defendant is entitled to judgment.

At Law. Action to recover penalties by the United States against the Boston & Maine Railroad. Judgment for defendant.

Thos. J. Boynton, U. S. Atty., of Boston, Mass.

Charles S. Pierce and G. E. Kimball, both of Boston, Mass., for defendant.

MORTON, District Judge. This is an action to recover penalties for alleged violations of the Hours of Service Act (Comp. St. §§ 8677–8680). The declaration contains 25 counts, each of which relates to a telegraph operator and charges that he was employed more than 9 hours in a station which was "continuously operated night and day." The case is heard upon an agreed statement of facts; no other evidence being introduced. In all of the counts the hours of employment alleged are more than 9; in many of them, more than 13; but as to these latter counts the government admits, and the agreed statement makes it plain, that there were off-duty periods which reduced the time of employment to less than 13 hours. So that in all the question is the same, as both parties agree, viz. whether the station was or was not "continuously operated night and day" within the meaning of the statute.

The stations referred to are located in Arlington and in Amherst, in this district. Neither town is of large size; Amherst is a country community, and Arlington a suburban one. The Arlington station was continuously kept open from 5:45 a. m. to 9 p. m.; the Amherst one, apparently, from 6 a. m. to 9 p. m., although in several of the counts the operator there is alleged to have been on duty until after 9.

The statute in question is the Act of March 4, 1907, as amended by the Act of May 4, 1916, and the Act of September 5, 1916. The provisions on which this case turns are contained in the proviso of the second section, viz. that no person who dispatches or receives orders affecting train movements by telegraph shall be required or permitted to remain on duty for a longer period than 9 hours in 24, in stations "continuously operated night and day, nor for a longer period than 13 hours in * * * stations operated only during the daytime." The provisions relating to emergencies, etc., do not apply to this case.

The statute is anomalous, in that it regulates the length of time during which an operator may remain on duty, neither absolutely, nor with regard to his duties, but by the classification of the station where he happens to work. If it be a "continuously operated" one, employment is limited to 9 hours per day, regardless of how slight the duties

are; while, if it be classified as a "daytime" station, the operator may be required to work 13 hours, no matter how exhausting his duties.

The meaning of the statute, as has been pointed out (U. S. v. Atchison, T. & S. F. R. R., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361; U. S. v. Atlantic Coast Line R. R. Co., 211 Fed. 897, 123 C. C. A. 275), is far from clear. It divides stations or places into those that are "continuously operated night and day" and those "operated only during the daytime." Giving the language its ordinary meaning, it is evident that there might be, and in fact there are, places operated longer than "during the daytime," but which are not "continuously operated night and day." As everybody knows, many stations in country districts are kept open for the public convenience during the early hours of the evening as well as during the daytime, observing roughly the same hours of opening and closing as stores in their vicinity. The railroad agent at these places not infrequently does such telegraphic work as the business of the railroad requires, in addition to his other duties.

[1, 2] It is settled that the expression "continuously operated night and day" is to be understood as including stations which are closed part of the night, if they are operated during the daytime and a substantial portion of the night. U. S. v. Atchison, etc., supra. The same decision makes it clear that the mere keeping open of a station after 6 p. m. does not bring it within the 9-hour class. As applied to the case before me, the most significant word in the act is "night." Unless an office be operated in the night, as well as during the day, the 9-hour limitation does not apply.

[3-5] What constitutes night operation is a question of fact. The division into day and night which the statute contemplates apparently refers to the business day; e. g., "a day watchman" and "night watchman," "day shift" and "night shift." It would hardly be contended that a station kept open in the early evening primarily as an accommodation to the public was "operated" during the night. On the other hand, if kept open after hours when the public which it served would be likely to do business with it, and for purposes connected with the running of trains, it would be a night office.

Nine o'clock in the evening is evidently on the border line. In such cases it seems to me that the purpose for which the station was kept open is the decisive factor. If it be primarily for the accommodation to the public, the station would not, I think, be operated at night within the statute. This seems to me to be what Congress intended. "Operated," in the statute, signifies more than "kept open." The very looseness of the language was perhaps not unintentional. It is to be remembered that too severe limitation on hours of service at small stations will result in their being closed, thereby inconveniencing the public, without any corresponding advantage.

[6] The agreed statement throws no light on the purpose for which the stations in question were kept open during the evening, nor on the sort of work then done at them. It devolves on the plaintiff to establish the facts essential to recovery. As that is not done by the statement, there must be—

Judgment for defendant.