UNITED STATES v. ATLANTIC COAST LINE R. CO.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1914.)

No. 1191.

1. MASTER AND SERVANT (§ 13*)—OPERATION OF RAILROADS—HOURS OF SERVICE LAW.

Hours of Service Law (Act Cong. March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), regulating the hours of service of employés on interstate railroads, is a remedial and not a criminal statute, enacted to promote the safety of employés and the traveling public by prohibiting hours of service which presumably result in impaired efficiency on the part of·employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
211 F.—57

2. MASTER AND SERVANT (§ 13*)—EMPLOYMENT—REGULATION—HOURS OF SERVICE LAW.

Hours of Service Law (Act Cong. March 4, 1907, c. 2939, 34 Stat. 1416 [U. S. Comp. St. Supp. 1911, p. 1322]) § 2, provides that no operator, train dispatcher, or other employé who by the use of telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements, shall be permitted to remain on duty more than nine hours in any 24-hour period in towers, offices, places, and stations continuously operated night and day, nor for a longer period than 13 hours in offices and stations operated only during the daytime, except in case of emergency, etc. *Held*, that no distinction is to be drawn between offices in which train orders originate and from which they are issued and local offices, which merely receive and deliver the orders so issued, and which may be closed during a substantial portion of each 24-hour period; and hence, where a local telegraph office was regularly kept open for business from 6:30 a. m. to 10:15 p. m. in each 24-hour period, it was an office continuously operated night and day and was therefore within the nine-hour requirement.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. M. Smith, Judge.

Action by the United States of America against the Atlantic Coast Line Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

Ernest F. Cochran, U. S. Atty., of Anderson, S. C., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C.

George B. Elliott, of Wilmington, N. C. (P. A. Willcox, of Florence, S. C., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. This suit is brought by the United States to recover penalties for alleged violations of the act of Congress approved March 4, 1907, commonly known as the hours of service law, and the employés directly concerned are telegraphers in the service of defendant in error at Bennettsville, S. C.

From the stipulated facts on which the action was tried it appears that the telegraph office at the station named was regularly kept open for business from 6:30 a. m. to 10:15 p. m., or 15 hours and 45 minutes in each 24-hour period; that two operators were employed at this station, one of whom was required to be on duty from 6:30 a. m. to 12 o'clock noon, and from 1:00 p. m. to 6:30 p. m., and the other, known as a "second trick" operator, from 10:15 a. m. to 5:30 p. m., and from 6:30 p. m. to 10:15 p. m., or a total of 11 hours in each case; that the office in question, during the period covered by the suit, was closed for business, and the operators entirely relieved from duty, from 10:15 p. m. to 6:30 a. m., or 8 hours and 15 minutes, except on a few specified dates when the second trick operator remained on duty from 15 to 45 minutes after 10:15 p. m.; that during the hours from

6:30 a. m. to 10:15 p. m., when the office was kept open for business as aforesaid, the operators employed therein, by the use of telegraph and telephone, received and delivered, more or less frequently, orders relating to or. affecting the movement of trains engaged in interstate commerce; and that these operators received such train orders from . the office of the chief dispatcher, which was located at Florence, S. C., and kept continuously open throughout the 24 hours.

The question to be decided is whether the defendant in error,. by requiring or permitting its Bennettsville operators to be on duty during the 11 hours above described, to say nothing of the instances of somewhat longer hours, violated the proviso of section 2 of said act, which reads as follows:

"Provided, that no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places and stations continuously operated night and day, nor for a longer period than thirteen. hours in all towers, offices, places and stations operated only during the day time, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period of not exceeding three days in any week."

As the operators in question were customarily kept on duty for 11 hours out of the 24, and sometimes a little longer, it is apparent that defendant in error was chargeable with repeated violations of the statute, if the Bennettsville office belongs in the class of offices "continuously operated night and day," and equally apparent, since the hours of duty were always less than 13, that the law was fully observed and the defendant in· error free from liability, if this office belongs in the class of those ."operated only during the daytime." The trial court held that it was an office of the latter class, and accordingly directed a verdict in favor of defendant.    The correctness of that ruling is challenged by the writ of error to this court.

The meaning and intent of the hours of service act in various par-. ticulars has been the subject of considerable litigation, and some aid to the conclusion which should be reached in this case, or at least a starting point for discussion, is found in the decision of the Supreme Court in United States v. Atchison, Topeka & Santa Fé Ry. Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361. In that case it is said:

"We think that the government is right in saying that the proviso is meant to deal with all offices, and, if so, we should go further than otherwise we might in holding offices not operated only during the day time as falling under the other head."

In view of this· declaration, that the statute covers all telegraph offices in which interstate train orders are handled, and since the statute itself makes only two classes of such offices, it follows of course that this Bennettsville office is one to which the law applies, and that the telegraphers there employed can be kept on duty not more than 9 hours, if it be adjudged a "night and day" office, but may be held up to 13 hours, if it be adjudged a "daytime" office. It must perforce be put in one class or the other.

[1] This is not a criminal statute, and therefore is not governed by the rule of strict construction. Johnson v. Southern Pacific Co., 196 U. S. 17, 25 Sup. Ct. 158, 49 L. Ed. 363; St. Louis Southwestern Ry. Co. v. United States, 183 Fed. 771, 106 C. C. A. 136. It is rather a remedial statute which should be so. construed, if its language permits, as to best accomplish the protective purpose for which it was enacted. Stewart v. Bloom, 11 Wall. 493, 20 L. Ed. 176; Bechtel v. United States, 101 U. S. 597, 25 L. Ed. 1019. Obviously, that purpose was to promote the safety of employés and the traveling public by prohibiting hours of service which presumably result in impaired efficiency for discharging their important duties. The end to be attained by the law is a guide to its interpretation.

[2] It is argued by counsel for defendant in error that the Congress intended to distinguish between (1) offices in which train orders originate and from which they are issued, and which in the nature of the case must ordinarily be kept open for approximately the entire 24 hours, and (2) local offices which merely receive and deliver the orders so issued, and which may be and frequently are closed during a substantial part of each 24-hour period; and that therefore the classification of a given office depends as a practical matter upon whether it is an office like that of a train dispatcher, who actually directs and controls the movement of trains, or only a way station office where the operator aids the dispatcher by communicating orders and sending in reports. Besides, it is said that telegraphers in offices mainly occupied with the dispatching of trains have heavier responsibilities and are under greater strain, and consequently should be restricted to shorter hours, than employés at local stations who perform miscellaneous duties and perhaps devote only a small portion of their time to the receipt and delivery of train orders and the transmission of train reports.

The answer to this argument is twofold. In the first place, we find nothing in the language of the act to support such a distinction. The terms employed are plainly intended to include every sort of place where train orders are handled, however infrequently, by telegraph or telephone. There is nothing to suggest that the permitted hours on duty, whether 9 or 13, are determined by the number of train orders handled, if they are handled at all, or by the proportion of time which the employé spends in that particular service. Surely the descriptive words, "towers, offices, places, and stations," negative any intention to confine the nine hour limitation to those offices, however designated, in which the principal work of the operator is connected with the movement of trains. In short, we deem it beyond dispute that the classification of an office is fixed by the length of time it is kept open, and not in the least by the nature of the duties performed, if only those duties include the handling of train orders as occasion may require.

In the second place, it is not to be assumed that the telegrapher in a train dispatcher's office, or other similar office, performs more wearisome labor, or becomes sooner fatigued, than the operator at an ordinary local station. The latter, it is true, may average only a small number of train orders in the course of a day, but nevertheless he may have, and usually does have, other duties which are varied and

often onerous. Even if he is not called upon to act as station agent, and does little but use the telegraph or telephone, the orders and messages of the company not relating to trains, and the commercial business of the community, may involve exertion and responsibility quite as fatiguing as the work of a telegrapher engaged mainly in the transmission of train orders. In other words, and for the reasons here suggested, it seems to us that operators at local and subordinate stations are scarcely less liable than operators at main offices to suffer loss of alertness and efficiency from excessive hours of duty. In our judgment, neither the terms and purpose of the statute, nor the conditions of actual service, justify us in upholding the contention here considered.

It is conceded that an office need not literally be kept open every minute of the 24 hours in order to be within the 9-hour restriction. But if it may be closed for one or more substantial intervals of time and still remain in the 9-hour class where shall the line of division be drawn? In the Atchison Case, above cited, the office was shut from noon to 3 p. m., and from midnight to 3 a. m., or 6 hours in all out of the 24, and the Supreme Court strongly intimated, though the point was not directly involved, that it should be classed as a 9-hour office, because the proviso was meant to deal with all offices, and therefore "we should go farther than otherwise we might in holding offices not operated only during the daytime as falling under the other head." But where is the logical place to stop? The words "operated only during the daytime" are quite as much entitled to be made effective as the words "continuously operated night and day." Manifestly, if we look only at the surface meaning of words, these two definitions are inconsistent, or at least overlap each other, since there must be many offices which could not be fairly described as "operated only during the daytime" and yet are not, in any absolute sense, "continuously operated night and day." For example, in a case argued at the same time with this, the office was open throughout the 24 hours except from 1:30 a. m. to 6:30 a. m. To say that such an office is operated only in the daytime is to do violence to the commonest understanding.

This is plainly a case where the natural significance of terms must yield to the necessity for giving to the entire proviso such reasonable meaning as will promote its beneficial purpose. If it seems a strained and unwarranted construction to hold that an office which is generally closed at 10:15 p. m., and never later than 11, and kept closed till 6:30 a. m., is nevertheless "continuously operated night and day," is it not equally strained and unwarranted to hold that an office which is kept open from 6:30 a. m. to 10:15 p. m., or later, is nevertheless "operated only during the daytime"? Since the office in question must be assigned to one class or the other, we are of opinion on the whole that it will be more correctly and usefully placed in the night and day class than in the daytime class. If this conclusion gives greater effect to the words "operated only during the daytime" than to the words "continuously operated night and day," we think the objects of the law require that preference be accorded to a construc-

tion which recognizes the legislative intent to permit 13 hours of service in offices kept open only such number of hours in the aggregate as do not materially or substantially exceed the length of an ordinary day, and to prohibit more than 9 hours service in offices kept open such number of hours in the aggregate as necessarily include a material or substantial portion of the night.

It follows that the judgment should be reversed, and the case remanded for a new trial.

Reversed.

WOODS, Circuit Judge (concurring). The decision of this case depends on the meaning of the word "continuously" in the following statute:

"Provided, that no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period of not exceeding three days in any week."

The defendant contends that "continuously" means without cessation, and that the offices, etc., "continuously operated night and day" can only include places operated without cessation through the night and day. The context and the purpose of the statute shows that this is not the sense in which the words were used. The statute was intended to cover all telegraph offices. United States v. Atchison, etc., R. Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361. If the defendant's construction were adopted, it would cover only day offices and offices operated throughout the day and night, leaving out the offices operated during the day and into the night. There is some reason for attributing the meaning of habitually or regularly to the word continuously; but the plain construction, and that which will give the statute its full signification, is to take the whole phrase "offices, places, and stations continuously operated night and day" to mean offices whose operation is continued from the day into the night. The statute assumes that all offices will be operated during the daytime, and for those operated during the daytime only it makes the 13-hour requirement; for those which are operated during the daytime with a continuance of operation into the night it makes the nine hour requirement. The office at Bennettsville was in operation during the daytime with continuance into the night, and therefore falls under the 9-hour class.