UNITED STATES v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 11, 1918.)

No. 4990.

1. MASTER AND SERVANT ⊜⇒13—HOURS OF SERVICE ACT—PERIODS OF REST.
    Two periods, one of 3 hours 7 minutes, and one of 2 hours 24 minutes, during which a telegraph operator in a railroad station, who lived in the building, was off duty, and during which it was his practice to sleep, *held* substantial periods for rest, and not to be counted as periods of labor, under Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1916, § 8678).

2. MASTER AND SERVANT ⊜⇒13—HOURS OF SERVICE ACT—TELEGRAPH OPERATORS—DAYTIME OFFICES—"OPERATED ONLY DURING THE DAYTIME."
    A railroad office, in which the regular hours of the telegraph operator, who is also station agent, are from 7 a. m. to 6 p. m. daily, with an inter-

mission of an hour at noon for dinner, and in which he is required to serve ordinarily from 30 to 40 minutes at 12:35 a. m. and from 30 to 40 minutes at 4:20 a. m., in order to meet trains, but in which the aggregate of his time on duty does not exceed 13 hours in any 24-hour period, is an office "operated only during the daytime," within the meaning of Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1916, § 8678).

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the United States against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Judgment for defendant, and the United States brings error. Affirmed.

Alfred Jaques, U. S. Atty., of Duluth, Minn. (Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

R. V. Gleason, of Minneapolis, Minn. (Alfred H. Bright, of Minneapolis, Minn., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and YOUMANS, District Judges.

SANBORN, Circuit Judge. The United States complained of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company in five separate counts, that on five different days it required and permitted its telegraph operator, M. W. Curtis, to be and remain on duty at Harlis, in the state of Minnesota, more than 9 hours in a period of 24 hours. The railway company answered that under the interpretation of the Hours of Service Act (34 Stat. 1415, 1416, § 2) made by the Interstate Commerce Commission in conference ruling No. 287–G, issued March 16, 1908, the station at Harlis was one operated only during the daytime, that Curtis was not required or permitted to be on duty at that station more than 13 hours in any 24-hour period, and there had, therefore, been no violation of the statute. The case was tried by the court on these admitted facts:

Harlis was a small station on defendant's railway, with not more than 15 families tributary thereto within a radius of 3 or 4 miles. The station work was very light. Curtis was the station agent and telegraph operator. Only four trains were scheduled to stop at that station daily, four other trains were scheduled to pass through, and there were occasional extra trains. Curtis' regular hours of daily service were from 7 a. m. to 6 p. m. with 1 hour off duty in the middle of the day for dinner. He lived in the station. In addition to his 10 hours of regular work above stated, he was required to meet passenger train No. 65 due at Harlis at 12:54 a. m. and passenger train No. 64 due at Harlis at 4:40 a. m., and to be on hand 30 minutes before each one of these trains was due to arrive. He was not called by the dispatcher for these trains, but used an alarm clock. He was generally relieved from all service after the departure of train No. 62, due to pass through Harlis at 5:59 p. m., until time for him to get up to meet No. 65, due at Harlis at 12:54 a. m. After the departure of the latter train it was his general practice to go back to bed until time to get

up for train No. 64, due at Harlis at 4:40 a. m., and after the departure of that train to go to bed until time for his regular service at 7 a. m. Taking one of the 24 hours in which a violation of the law is alleged as a sample of the five (for the service was not materially different in any of the other 24-hour periods), he was on duty during the 24 hours commencing at 12:35 a. m., May 19, 1916, from that time until 1:13 a. m., 38 minutes; he was at liberty from 1:13 a. m. until 4:20 a. m., 3 hours and 7 minutes; on duty from 4:20 a. m. until 4:51 a. m., 31 minutes; at liberty from 4:51 a. m. until 7:15 a. m., 2 hours and 24 minutes; on duty from 7:15 a. m. until 12 noon, 4 hours and 45 minutes; at liberty from 12 noon until 12:50 p. m., 50 minutes; on duty from 12:50 p. m. until 6:20 p. m., 5 hours and 30 minutes; at liberty from 6:20 p. m. until 12:35 a. m., 6 hours and 15 minutes. He was on duty in the aggregate during the 24-hour period 11 hours and 24 minutes, and at liberty 12 hours and 36 minutes. The periods of relief or rest constituting these 12 hours and 36 minutes were respectively 3 hours and 7 minutes, 2 hours and 24 minutes, 50 minutes for dinner, and 6 hours and 15 minutes.

[1] Counsel for the government suggest that, if the first two periods are thought to be too short or too inopportune for rest and relief, the operator was on duty more than 13 hours. But these two periods came in the night, when the operator was in the station where he lived and slept, and it was his practice to pass them in bed. The court below found these periods to be times of substantial rest, and refused to count them as periods of labor or duty, and any other conclusion would be evidently unjust and irrational.

The question whether Harlis was an office, place, or station "continuously operated night and day," to which the 9-hour limit applies, or "one operated only during the daytime," to which the 13-hour limit is applicable, under the true interpretation of the Hours of Service Act (34 Stat. 1416), remains. The pertinent part of the provision of that act, from which the answer to this question must be deduced, reads:

"No operator [of the character of Mr. Curtis] shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime." Comp. St. 1916, § 8678.

Little reflection is required to convince that this statute may not be literally construed and enforced. It cannot be indispensable to the existence of a night and day office that it shall be continuously operated every hour of the night and every hour of the day, nor can it be indispensable to the existence of the daytime office that it shall never be operated in the nighttime. An enforcement of the statute as it literally reads would render its terms contradictory, would cause the daytime and the night and day time to overlap each other, and would make the enactment absurd and its enforcement impracticable. It must have a reasonable, sensible construction, one that will advance the remedy it provides, repress the wrong at which it was leveled, and effect the intention of the Congress that enacted it. To this end the

facts of each case as it arises must be laid alongside the statute, and the office to which they relate must be assigned to the class to which, in the light of such an interpretation of the law, it belongs.

It is plain that Congress intended by this act to place in the night and day class the offices which handled the heavier business and which frequently are served by several operators, for only where several operators serve would a nine-hour limit be practicable, and those which handled the lighter business and are ordinarily served by but one operator in the daytime class, for it permitted operators in the former class to serve but 9 hours, while it permitted those in the latter class to serve 13 hours in a 24-hour period. In the earlier part of the section, in which the provision of the statute under consideration is found, every common carrier subject to the act is prohibited from requiring or permitting an employé to remain on duty continuously for more than 16 consecutive hours; but it is the general construction of this prohibition that an intermission of an hour or two in the continuity of the service and in the consecutive hours is negligible, and that the hours of such intermission must be counted as a part of the continuous service and of the consecutive hours thereof, where the employé has no suitable opportunity to rest during such intermissions.

By the same mark the service of an operator in a daytime office for a short time, such as half an hour or an hour, a few times in the nighttime, when he has ample opportunity to rest and sleep notwithstanding, must be likewise negligible, and may not, under the rational, sensible, and true construction of the provision under consideration, take his office out of the daytime class, notwithstanding the description of that class in the statute as "operated only during the daytime." Such was the original construction of this statute by the Interstate Commerce Commission in its conference ruling No. 287, issued March 16, 1908, for the guidance of the railroad companies. That Commission said:

"The Commission interprets the phrase 'continuously operated night and day' as applying to all offices, places, and stations operated during a portion of the day and a portion of the night a total of more than 13 hours. The phrase 'operated only during the daytime' refers to stations which are operated not to exceed 13 hours in a 24-hour period, and is not considered as meaning that the operator may be employed only in the daytime."

This construction by the quasi judicial tribunal to which the interpretation and enforcement of this statute was expressly intrusted by the Congress is entitled to great weight, and should not be disregarded or overturned without conclusive reasons. United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Heath v. Wallace, 138 U. S. 573, 582, 11 Sup. Ct. 380, 34 L. Ed. 1063; United States v. Trans-Missouri Freight Association, 166 U. S. 290, 370, 17 Sup. Ct. 540, 41 L. Ed. 1007.

[2] The conclusion is that an office in which the telegraph operator's regular hours are from 7 a. m. to 6 p. m. daily, with an intermission of an hour at noon for dinner, and in which he is required to serve ordinarily from 30 to 40 minutes at 12:35 a. m. and from 30 to 40 minutes at 4:20 a. m., in order to meet trains passing through his sta-

tion at those times, but in which the aggregate of his time on duty does not exceed 13 hours in any 24-hour period, is an office operated only during the daytime under the true construction of section 2 of the Hours of Service Act (34 Stat. 1416).

Mr. Curtis served in such an office, he did not remain on duty longer than 13 hours in any 24-hour period in any of the cases before us for review, and the judgment below is affirmed.