### UNITED STATES v. CORNWALL & L. R. CO.

(District Court, M. D. Pennsylvania. November 29, 1920.)

No. 921.

1. **Master and servant** ☞13—**Hours of Service Act entitled to reasonable construction.**

Hours of Service Act, § 2 (Comp. St. § 8678), limiting time on duty in telegraph offices, etc., must be given such reasonable, sensible construction as will promote its beneficial purpose.

2. **Master and servant** ☞13—**Telegraph office held to be in "night and day" class, within Hours of Service Act.**

A railroad telegraph office, operated 15 hours per day in winter and 16½ hours in summer, held continuously operated night and day, within the Hours of Service Act (Comp. St. §§ 8677–8680), limiting an employé's time on duty to nine consecutive hours in such offices.

3. **Master and servant** ☞13—**Periods allowed for meals not deducted in computing time under Hours of Service Act.**

In a prosecution for violating the Hours of Service Act (Comp. St. §§ 8677–8680), periods ranging from 20 to 50 minutes, allowed a telegraph operator for meals, will not be deducted in computing his consecutive hours of service.

At Law. Suit to recover penalties by the United States against the Cornwall & Lebanon Railroad Company. Judgment for plaintiff.

R. L. Burnett, U. S. Atty., of Scranton, Pa.

E. E. McCurdy, of Lebanon, Pa., and Chas. H. Bergner, of Harrisburg, Pa., for defendant.

WITMER, District Judge. This suit is brought by the United States to recover penalties for alleged violations of the act of Congress approved March 4, 1907, known as the 'Hours of Service' Law, wherein (section 2 [Comp. St. § 8678]) it is provided:

"That no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any 24-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime."

There are, practically, two cases involved in the 11 counts of the government's complaint. The first 6 counts allege that on six different days the defendant company required and permitted its certain telegraph operator and employee, J. H. Killinger, to be and remain on duty at Chestnut Street, Lebanon, Pa., station, for a longer period than 9 hours in a 24-hour period, to wit, from 5:55 a. m. to 5 p. m. It is admitted by the defendant that the station at Lebanon was open and operated daily from 6 a. m. to 9 p. m. during the winter months, and from 6 a. m. to 10:30 p. m. during the summer months. Killinger's hours were from 6 a. m. to 5 p. m., a period of 11 hours, when he was succeeded by another operator, who served from 5 p. m. until closing hour, at 9 p. m. or 10:30 p. m., depending upon the season.

The sole question presented as to Killinger, therefore, is whether he was employed in a 'daytime' office or a 'day and night' office. This question of an office operated only during the daytime and one operated continuously, night and day, was touched upon, but not decided, by the Supreme Court in the case of United States v. Atchison, Topeka & S. F. Railway Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361. In that case the court said:

"The antithesis is between places continuously operated night and day and places operated only during the daytime. We think that the government is right in saying that the proviso is meant to deal with all offices, and, if so, we should go farther than otherwise we might in holding offices not operated only during the daytime as falling under the other head."

If, then, it was not a daytime office, it must fall within the class called 'night and day' offices. United States v. Grand Rapids & I. Ry. Co., 224 Fed. 669, 140 C. C. A. 177; U. S. v. Atlantic C. L. R. Co., 211 Fed. 897, 128 C. C. A. 278.

[1] In determining the question, the nature and purpose of the act must be borne in mind. In interpreting the proviso, it must be given such reasonable, sensible construction as will promote its beneficial purpose, and effect the intention of the Congress that enacted it. U. S. v. St. P. & S. S. M. Ry. Co., 250 Fed. 384, 162 C. C. A. 452.

"This is not a criminal statute, and therefore is not governed by the rule of strict construction. Johnson v. Southern Pacific Co., 196 U. S. 17, 25 Sup. Ct. 158, 49 L. Ed. 363; St. L. S. W. Ry. Co. v. U. S., 183 Fed. 771, 106 C. C. A. 136. It is rather a remedial statute, which should be so construed, if its language permits, as to best accomplish the protective purpose for which it was enacted. Stewart v. Bloom, 11 Wall. 493, 20 L. Ed. 176; Bechtel v. United States, 101 U. S. 597, 25 L. Ed. 1019. Obviously, that purpose was to promote the safety of employees and the traveling public by prohibiting hours of service which presumably result in impaired efficiency [of servants] for discharging their important duties." U. S. v. Atlantic Coast Line Railroad Co., 211 Fed. 900, 128 C. C. A. 275.

[2] It is reasonable to suppose that Congress intended in general to include in the "daytime" class such offices as had the lighter business,

which could be readily handled by one operator, and to include in the "night and day" class those offices which had such amount of business as would require several operators, in which case only would it be practical to have a 9-hour limit. Therefore in the former class the 13-hour period was allowed; in the latter, only a 9-hour period. U. S. v. M., St. P. & S. S. M., supra.

An office may be operated a portion of the night and a portion of the day, and yet fall beneath the class which is called "daytime" offices. As was said by Judge Knapp in the Atlantic Coast Line Case cited:

"The classification of an office is fixed by the length of time it is kept open, and not in the least by the nature of the duties performed, if only those duties include the handling of train orders as occasion may require."

It appears that, where an office is open such a length of time as to require more than one operator with a 13-hour period, then, there being two or more operators required to complete such period, 9-hour periods would become practicable. And such, indeed, was the view of the Interstate Commerce Commission, the administrative body charged with the enforcement of the act, who, on March 8, 1908, made a ruling— 287(g):

"The commission interprets the phrase 'continuously operated night and day' as applying to all offices, places, and stations operated a portion of the day and a portion of the night, a total of more than 13 hours. The phrase 'operated only during the daytime' refers to stations which are operated not to exceed 13 hours in a 24-hour period, and is not considered as meaning that the operator thereat may be employed only during the daytime."

It has been repeatedly decided that the ruling of an administrative body charged with the enforcing of a law is not lightly to be disregarded, but is entitled to great weight. U. S. v. Moore, 95 U. S. 763, 24 L. Ed. 588; Heath v. Wallace, 138 U. S. 582, 11 Sup. Ct. 380, 34 L. Ed. 1063; United States v. T. F. A., 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; Pennell v. P. & R., 231 U. S. 675, 34 Sup. Ct. 220, 58 L. Ed. 430.

In the case of Killinger, his hours were from 6 a. m. until 5 p. m., or 11 hours, when he was succeeded by another operator, who served from 5 p. m. until 9 p. m. or 10:30 p. m. The office itself was open 15 hours in winter and 16½ hours in summer. It was not such an office as was contemplated by Congress in the term "operated only during the daytime," and the government's contention is consequently correct, that defendant violated the act in requiring Killinger to remain on duty more than 9 hours.

[3] The remaining five counts refer to A. W. Garman, defendant's telegraph operator at Bellaire, Pa. It appears that Garman began his period of duty at 6:40 a. m.; that at 6:55 a. m. he was relieved until 7:55 a. m., or a period of 50 minutes, and was further relieved between 7:45 a. m. and the completion of his period by other periods of from 20 to 30 minutes for dinner, and 30 to 45 minutes for supper. He completed his work at a time ranging between 8:59 p. m. and 9:03 p. m. The total period, from 6:40 a. m. to 9 p. m. would be about 14 hours 20 minutes.

It is contended by defendant that, if the period of 30 or 40 minutes for meals at noon and in the evening be deducted, together with a 50-minute period in the morning, it would bring the time Garman was on duty within the 13 hours. This presents a question, therefore, not arising in the Case of Killinger, viz.: Is a respite granted the operator during the period for meals to be deducted from his hours of duty? In the Atchison Case the Supreme Court said: "A trifling interruption would not be considered." It has been practically held, in the cases to which reference has already been made, that the defendant cannot break the continuity of working hours by closing the office for small periods of 30 or 40 minutes during the day, and in this manner avoid the statute. U. S. v. St. Louis Southwestern Railway Co. of Texas (D. C.) 189 Fed. 954.

The statute was intended to promote the safety of employees and the traveling public by affording sufficient time for recreation and rest, so that small periods during their hours of duty for meals would not offer any opportunity for rest as contemplated. Such intermission must be counted as a part of the continuous service. Brief periods allowed for meals should not be deducted from the time of service; they are "trifling interruptions," in the language used by the Supreme Court in the Atchison Case. It follows that Garman remained on duty more than 13 hours in a 24-hour period, in violation of that statute.

Defendant must accordingly be found guilty upon each of the 11 counts. In none of the cases does the violation appear aggravated; hence judgment will be entered against defendant for the minimum fine of $100 on each of the counts, being a total of $1,100. Defendant to pay the costs.