## UNITED STATES v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, First Circuit. June 29, 1921.)

No. 1488.

**Master and servant ⚖══13—Telegraph operator held not "on duty," within federal Hours of Service Act, during rest periods.**

A railway telegraph operator, who was paid for about 12 hours' service out of 24-hour periods. but was in actual service only 5 or 6 hours, being released for periods of from 1 to 2 hours from time to time by

---

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the train dispatcher, *held* not "on duty" for a longer period than 9 hours, in violation of Hours of Service Act March 4, 1907, § 2 (Comp. St. § 8678).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, On Duty.]

In Error to the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Action by the United States against the New York, New Haven & Hartford Railroad Company. Judgment for defendant, and the United States brings error. Affirmed.

Alonzo H. Garcelon, Sp. Asst. U. S. Atty., of Boston, Mass. (Daniel J. Gallagher, U. S. Atty., of Boston, Mass., and Stacy H. Myers, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

John L. Hall, of Boston, Mass., for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and ALDRICH, District Judge.

JOHNSON, Circuit Judge. In this action the United States sought to recover penalties provided for violations of the federal Hours of Service Act of March 4, 1907, c. 2939, § 2, 34 Stat. 1416, Comp. Stat. § 8678, the material part of which is as follows:

"Provided, that no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week."

The defendant employed at its station at Marlboro Junction in the state of Massachusetts one Charles W. Crane as a telegraph operator. Two operators were employed by it at this station, which was one falling within the class of offices designated under the statute as "continuously operated night and day," although at certain hours it was closed. United States v. B. & M. R. R. (C. C. A.) 269 Fed. 89.

The question presented by the assignment of errors, is whether one of these operators, who went on duty at 4 o'clock p. m., and was not finally released from duty until 4 o'clock a. m., by reason of certain releases, during which time he was not required to stay at the station and was not subject to call, was employed more than 9 hours in the period of 24 hours upon 5 different days during the month of June, 1916.

Upon the days in question this operator went on duty at 4 p. m. and remained until from 7:20 to 7:27 p. m., when he was released from duty by the train dispatcher to return at periods varying on the different days from 8:35 p. m. to 9:20 p. m., during which time he was not sub-

ject to any call, nor required to remain upon the railroad premises, and could do what he chose with his time, which he employed, as he testified, sometimes in sleeping, sometimes in reading, and sometimes attending the theater. After this definite release he returned to his post and remained to an hour varying from 10 p. m. to 10:14 p. m., when he was again definitely released, under the same conditions, by the train dispatcher from service on 1 day until 12:15 a. m., and upon the other 4 days until 12:30 a. m., and after his return to duty at the end of the second period of release he remained on duty until 12:52 a. m. upon 2 of the days in question, 12:55 a. m. upon 2 others, and 12:58 upon the fifth, when he received a third release from duty until 3 o'clock a. m. upon two days, 3:05 a. m. upon the third day, 3:20 a. m. upon the fourth day, and 2:45 a. m. on the fifth day, and after his return to duty at the expiration of this release he remained at his post until 3:35 a. m. on one day, 3:58 a. m. upon the second day, 3:41 a. m. the third day, 4:10 a. m. the fourth day, and 3:55 a. m. the fifth day. Upon these days the aggregate of his actual service varied from 5 hours 13 minutes upon one day to 6 hours 9 minutes upon another, and his periods of release aggregated from 5 hours 46 minutes to 6 hours 41 minutes. If these periods of release are not to be deducted from his total hours of service, this telegraph operator was on duty nearly 12 hours out of the 24-hour period upon the days in question, and he received pay from the defendant company for the whole period of service.

The case was heard by the learned judge of the District Court without a jury, who has found that the release periods allowed to the operator should be deducted from his total hours of service, and that when he was released for a definite time by the train dispatcher he was not "on duty"; that these interruptions in the service of the operator—

"were at a time when Crane did not require meals, but did require rest. They were unrestricted; they were opportune. Crane was not subject to call during each period; and, while he was not advised, on the day before, of his exact number of minutes of rest on the following day, he was advised by his experience that these periods were to present substantial opportunities for release, from an hour to more than 2½ hours.

"Upon the testimony I am constrained to find that the times of release were of so substantial and definite a period that they clearly gave means of rest and recuperation. They were of a character which tended to prevent the dangers which arise to employees and to the public from continuing men in a hazardous occupation for a time so long and so indefinite as to render them unfit to give a service essential to their protection.

"Upon the testimony it cannot be said that Crane was, within the meaning of the statute, 'on duty' during these rest periods. During those periods he was not engaged in work; he was not charged with a responsibility which would prevent him from rest and recuperation.

"In my opinion the government has not, in either of the five counts of the declaration, made out a case of violation of the statute."

These findings of fact and the conclusion of law are assigned as error. The controlling purpose of Congress in the enactment of this statute was the protection of the lives of the traveling public, by preventing the employment of men charged with responsible duties as to movements of trains by telegraph or telephone for so long a time as to render them incapable of performing their duties efficiently. While Congress al-

lowed by the statute the employment of other classes of employees for a period of 16 hours continuously and then a period of rest for 10 consecutive hours, or of 16 hours in the aggregate out of a 24-hour period, to be followed by 8 hours of consecutive rest, it fixed the period of employment of telegraph operators in stations operated day and night at 9 hours in the 24-hour period, and has made no exceptions which would cover stations where there were but few trains and but little work for an operator. It did provide that, in particular cases, the Interstate Commerce Commission might extend the time in which the statute should go into operation as to them; but no power was conferred upon the Interstate Commerce Commission, nor upon the court, to exempt from the provision of the act particular stations at which the common carrier might be released from the requirements of the act because of the small number of trains whose arrival or departure was to be announced.

The act applies to all stations "continuously operated night and day," and provides that a telegraph operator shall not "be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period" in such stations except in case of emergency.

It was held in United States v. A., T. & S. F. Ry. Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361, that a telegraph operator who was employed for 6 hours and then, after an interval of 3 hours, for a period of 3 hours longer, in 24 hours, was not employed for a longer period than 9 hours. In this case the station and telegraph office were shut from 12 to 3 o'clock by day and by night, but open the rest of the day, and the telegraph operator was employed from half past 6 o'clock in the morning until 12 noon, and again from 3 p. m. to 6:30 p. m., or 9 hours in all of actual work.

Following this decision of the Supreme Court, it was held in Southern Pacific Co. v. United States, 222 Fed. 46, 137 C. C. A. 584 (C. C. A. 9th Circuit), that an employee other than a telegraph operator, who was released from duty for 1 hour, when he was free to come and go, if the period of release was a substantial and opportune period of rest under all the circumstances, did not work more than 16 hours consecutively, and that whether these periods were substantial and opportune periods was a question of fact for the jury.

In United States v. A., T. & S. F. Ry. Co. (D. C.) 232 Fed. 196, it was held by Pollock, District Judge, that a telegraph operator, who worked from the hour of 8 a. m. to the hour of 12 o'clock noon, and from the hour of 1 o'clock p. m. to the hour of 6 o'clock p. m., he being off duty during the time from 12 o'clock noon to 1 p. m., when he was not subject to call by the defendant company, was not so employed as to violate the statute.

In United States v. Minn., St. Paul & S. S. M. Ry. Co., 250 Fed. 382, 162 C. C. A. 452 (C. C. A. 8th Circuit), it was held that two periods, one of 3 hours 7 minutes, and one of 2 hours 24 minutes, during which a telegraph operator in a railroad station, who lived in the building, was off duty, and during which it was his practice to sleep, were substantial

periods of rest, and not to be counted as periods of labor under the Hours of Service Act.

On the other hand, it was held in C., R. I. & P. Ry. Co. v. United States, 253 Fed. 555, 165 C. C. A. 225 (C. C. A. 8th Circuit), that an hour allowed a telegrapher for meals, during which he was subject to recall, etc., could not be deducted from the whole time he was on duty, within the Hours of Service Act, so as to allow a railroad company to escape the penalty for violating the act by keeping him on duty more than 9 hours; that "he was at his employer's beck at any time, and might even be called to the office from the table." He was not free to go from his home beyond reach of summons for act of duty, but had to hold himself within call and with readiness to respond at any moment.

In United States v. Cornwall & L. R. Co. (D. C.) 268 Fed. 680, District Judge Witmer held: A period ranging from 20 to 50 minutes allowed a telegraph operator for meals will not be deducted in computing his consecutive hours of service, and that such intermissions must be counted as part of the continuous service.

The Supreme Court of the United States having decided that the 9 hours of service in 24 in which a telegraph operator is employed need not be continuous, but that the aggregate of his employment within the 24-hour period determines whether he has been employed more than 9 hours in contravention of the act, the test which has since been applied by the courts in the construction of this act has been whether the release periods were of such substantial length and at such a time as to afford rest and release from the strain of labor. In the present case the operator had three release periods, each of them of more than an hour in length, and knew each day when he came to work, as he testified, that he would receive these release periods at substantially the same time and for the same duration as on previous days. He was notified by the train dispatcher at the close of each period of actual service when he might leave and when he should return to his post, and during these intervals he was free to employ himself as he saw fit. His home was only about 1,000 feet away, and he sometimes went there during these periods. His duties were not exacting, and he was only required to report the arrival and departure of a few trains. He was released finally from duty at 4 o'clock in the morning, and had 12 consecutive hours for rest before returning to work.

Under the construction given to the statute in United States v. A., T. & S. F. Ry. Co., supra, and considering the definite periods of release given to the operator, under the circumstances of this case, we think, as did the District Judge, that he was not employed more than 9 hours in a 24-hour period.

In reaching the conclusion which we have, we do not wish it understood that we hold that such periods of release as were granted the operator in this case would in themselves, under all circumstances, break the continuity of service, because each case must be decided upon its own peculiar conditions. Under other circumstances, such periods of release might not be sufficient to break the continuity of service and af-

ford such an opportunity for rest and release from responsibility and mental tension as it is the evident purpose of the act to secure.

The judgment of the District Court is affirmed, with costs to the defendant in error.

<hr>

