CHICAGO AND EASTERN ILLINOIS RAILWAY
COMPANY *v.* SCHRAEDER.

[No. 13,503.   Filed October 25, 1929.]

Frank H. Hatfield, Louis L. Roberts and K. L. Richmond, for appellant.

Emra H. Ireland and Winfield K. Denton, for appellee.

McMahan, C. J.—Action by appellee against appellant on an insurance certificate insuring appellee against loss resulting directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means. Trial by jury resulted in a verdict and judgment for appellee in the sum of $840.

Appellant contends that the verdict is not sustained by sufficient evidence, that it is contrary to law, and that the court erred in giving and in refusing to give certain instructions.

Appellee, at the time of his injury, was an employee of appellant, and held a contract of insurance whereby appellant had insured him "against loss resulting directly and independently of all other causes from bodily injuries and death effected solely through external, violent and accidental means." Referring to the benefits payable under the policy, the contract provides that:

"Such benefits shall not accrue except for such bodily injuries and death as are sustained by said insured while he is actually engaged in the service of said company, and on duty, nor unless immediate notice of such injury and death shall be given by said insured or his beneficiary to said insured's superior officer. . . . No benefits shall accrue hereunder for any injury or death that may be sustained by said insured . . . as the result of his own violation of the rules of said company."

Appellee, during the two weeks immediately prior to the day on which he was injured, had been making student trips as a fireman between Evansville and Terre Haute, and, while so doing, stayed at a boarding house in Terre Haute. After making such trips for two

weeks, he was employed as a regular fireman, and on December 29, 1924, was working as a fireman at Sieffert. There is no town or houses at Sieffert, only a coal yard and dispatcher's office. He came to his work on a passenger train, got off at Farmersburg, and walked to Sieffert, a distance of about a mile. He began work at 12 noon and quit work at 8 p. m. When he quit work, he left his engine in the yard where he had been working and went to the dispatcher's office and made out his time. Appellant had issued to its employees, including appellee, meal tickets that would be accepted as cash by a certain boarding house at Terre Haute where appellee had been boarding. Through an arrangement with the boarding house, these tickets were turned over to appellant, and the amount thereof deducted from the employee's wages each pay day for the use of the proprietor of the boarding house. Sieffert is 10 or 12 miles from Terre Haute. It was the custom of the employees of appellant working at Sieffert at the end of the day's work to "deadhead" their way on locomotives and trains of appellant to Terre Haute. On the night when appellee was injured, after having quit his work, and after having turned in his time, he walked out onto the platform in front of the dispatcher's office, and, while attempting to get on the engine of a slowly moving freight train, for the purpose of going to Terre Haute, was injured. After turning in his time and being checked out, appellee had nothing to do and was not subject to call until 12 o'clock noon the next day. He was free to do as he desired and to go where and how he pleased.

Appellant's first contention is that appellee was not engaged in any service for appellant at the time he was injured, was not on duty, and, therefore, not entitled to recover.

Appellant relies principally upon cases construing the federal "Hours of Service Act" (45 USCA §§61-64)

and the order of the Interstate Commerce Commission, which make it unlawful for any common carrier subject to the act of Congress "to require or permit any employee subject to this Act to be or remain on duty for a longer period than sixteen consecutive hours."

In *United States* v. *Chicago, etc., R. Co.* (1912), 195 Fed. 783, it was held that an employee was on duty within the statute when he was at his post of duty in obedience to rules or requirements and ready and willing to work, whether actually at work or awaiting orders. In discussing "duty" as used in the statute, the declared purpose of which was "to promote the safety of employees and travelers upon railroads by limiting the hours of service of employees thereon," the court said: "An employee is on duty when he is at his post in obedience to rules or requirements of his superior, and ready and willing to work, whether actually at work or waiting for orders or for the removal of hindrances from any cause. The words 'on duty' appear to have been intelligently chosen and used in the composition of the statute to bar all excuses for noncompliance with its requirements by any pretext of misunderstanding its meaning." To the same effect, see *United States* v. *Denver, etc., R. Co.* (1912), 197 Fed. 629.

In *St. Louis, etc., R. Co.* v. *Harvey* (1906), 144 Fed. 806, a servant of the railroad was injured in a collision between a hand-car on which he was riding and another hand-car operated by other servants of the company. The question at issue was whether the servants on the car negligently causing the collision were within the scope of the duty assigned to them under their employment, that is, whether the acts were done during the time of their employment about the business of their master. It appeared that the servants whose negligence caused the injury had taken the hand-car and gone to a station on the line of the railroad and returned several

hours after the time of their employment for the day had ended. There was no evidence as to the purpose these men had in using the hand-car, and, under the evidence, the court held the presumption was that they were not engaged in any business of the company, but were attending to their own affairs exclusively, and that the evidence was not sufficient to sustain the verdict. Other cases of like character cited by the appellant are of no controlling influence in the instant case.

A telegrapher not released from duty at lunch time, but who is subject to call is on duty under the 16-hour law. *United States* v. *New York, etc., R. Co.* (1921), 274 Fed. 321. But in *United States* v. *Atchison, etc., R. Co.* (1911), 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361, it was held that where a telegrapher was employed for six hours, and then, after an interval of three hours, was employed for a period of three hours, was not employed for a longer period than nine hours.

The question under the 16 hours of service act seems to be whether the time the employee is released from call to duty is for a substantial and opportune period of rest. *Southern Pac. Co.* v. *United States* (1915), 222 Fed. 46; *United States* v. *Atchinson, etc., R. Co.* (1916), 232 Fed. 196; *United States* v. *Minneapolis, etc., R. Co.* (1918), 250 Fed. 382.

In *Brown* v. *Pere Marquette R. Co.* (1927), 237 Mich. 530, 213 N. W. 179, a brakeman, who had been on duty for 16 consecutive hours, went off duty and went to sleep in the caboose of the train, which was unable to proceed because of a defective engine, was held not on duty at the time of his injury, an hour and 50 minutes after he had gone off duty, so as to render the company liable under the Federal Employer's Liability Act. In discussing "on duty" as used in the act, the court, at p. 537, said: "An employee may be inactive, and yet on duty. He is on duty if at his post and ready and willing

to work, though he may be but awaiting orders or the removal of hindrances which prevent him from performing his duties.

The federal statute was enacted for the safety of the employee, and was so construed as to give the employee time for rest and sleep, as a matter of protection to himself and others. None of the cases cited by appellant deal with a contract insuring the employee against injuries occuring while on duty.

In *Kephart* v. *Continental Casualty Co.* (1908), 17 N. D. 380, 116 N. W. 389, the casualty company had issued a policy of insurance insuring against loss by reason of accidental injury of a railroad brakeman while in the line of his duty. The train upon which the insured was working had been backed in on a side track to permit another train to pass. It was the duty of the insured to open the switch and to close it after his train had been backed upon the side track. He did this. The evidence was to the effect that while not employed, it was his duty to remain on the engine. He did not return to the engine after closing the switch, but waited 30 or 40 minutes for the other train to pass. The true cause of his injury was not shown, but the passing train passed over his feet and he died as a result of his injuries. It was there held that he was in the line of his duty.

In *Erie R. Co.* v. *Winfield* (1917), 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann Cas. 1918B 662, an employee took his engine to the place where it was to remain for the night, and started to leave the yard. His route lay across some of the tracks, and while passing over one, he was struck by an engine and died as the result of his injuries. It was there held that the deceased workman, in leaving the yard at the close of his day's work, was discharging a duty of his employment, and that it was a necessary incident of his day's work.

In *Kinney* v. *Baltimore, etc., Employee's Assn.* (1891),
35 W. Va. 385, 14 S. E. 8, 15 L. R. A. 142, the association
had issued to an employee of the railroad a certificate of
membership or policy insuring him against injury "by
accident while in the discharge of duty, and in the
service" of the railroad.   The insured had quit work
at the hour for quitting, and in from five to 15 minutes
thereafter, while crossing the tracks on his way home,
in passing through an opening between cars, he was
caught between them and killed.   In discussing the
objects of the organization in issuing the policy, the
court said:   "It was to afford members indemnity or
relief in case of accidents naturally incident to their
service, accidents likely to befall them, accidents fairly
attributable to that service, accidents occurring because
of their being in the service, traceable to no other cause,
which would not have happened but for that service.
Now, here is a man who but a few minutes before had
stopped work for that day, and was but going from the
place of his work to his home, was yet on the railroad
grounds, and in crossing the track was killed by cars of
the railroad company while used in the business of the
company—the very thing against which it was intended
to provide—a thing within the true spirit and intent of
the guaranty or insurance, if even not within its very
letter. . . . But he is killed while performing the
indispensable act of going from his work at the day's
close to his home, before yet he had gotten from the
railroad tracks and from among the cars, and out of the
field of the transaction of the company's business.   Was
he not, while passing over the railroad tracks in going to
and returning from his home in the course of his labors,
as much in the discharge of his duties and in the service
of the company as when he had the tools with which he
worked in his hands, for the purposes of the question
before us?   It does seem to me that to say that he was

not in the discharge of his duties in the service of the company, within the spirit and meaning and purposes of this organization and its constitution, would be very technical and refined."

In *Chicago, etc., R. Co.* v. *Schraeder* (1928), *ante* 100, 103 N. E. 534, a companion case to this, and between the same parties, we held that appellee, in leaving the place of his employment at the close of the day, was discharging a duty of his employment. We believe the provisions of the contract of insurance should be given a liberal construction in order that the purpose of issuing it may be realized. There is no question but that appellee's injury arose out of his employment. As was held by this court in *Indian, etc., Co.* v. *Wehr* (1920), 74 Ind. App. 141, 127 N. E. 202, 128 N. E. 765, the period of employment generally includes a reasonable time for ingress to and egress from the place of work while the employee is on the master's premises.

We hold that appellee was injured while on duty within the meaning of that term as used in the contract of insurance. And, having so held, it follows that the court did not err in giving or in refusing to give any instruction of which complaint is made.

Appellant, without referring to any rule of the company or any part of any rule, calls attention to the provision of the policy which provides that no benefits shall accrue for any injury or death sustained by the insured as the result of his violation of the rules of the company. We assume appellant refers to the rule which forbids the jumping on and off trains while in rapid motion. The train which appellee boarded was, according to the evidence, moving "about as fast as a man could walk." Whether appellee violated this rule by jumping on a train or engine while in *rapid* motion was a question of fact. And we cannot

say the jury was not justified in finding that appellee did not violate the rule in getting on the train, in view of the speed it was going.

Judgment affirmed.